**SENTENCING MEMORANDUM ON BEHALF OF ERIC SALDARRIAGA**

Docket No. 15 CR 136 (RJS)

Honorable Richard J. Sullivan

# LIST OF EXHIBITS

Letter to the Court from Eric Saldarriaga ………………………………………..…… Exhibit A

Letter to the Court from Anna Saldarriaga ………………………………………...….. Exhibit B

Letter to the Court from Alejandro Fernandez ………………………………...………. Exhibit C

Letter to the Court from Daniel Bastardo …………………………………….………… Exhibit D

Letter to the Court from Rev. Msgr. David L. Castro …………………………..…........ Exhibit E

Letter to the Court from Enio Bencosme ……………………...………………………… Exhibit F

Letter to the Court from Rafael Salinas …………………………...………….…………. Exhibit G

Letter to the Court from Thomas J. Bridges ……………………………………………. Exhibit H

Letter to the Court from Steven Grafakos ………………………………………………. Exhibit I

Letter to the Court from Michael Pizzi ……………………………………….…………. Exhibit J

Letter to the Court from Kevin Ripa ……………………………………...………………. Exhibit K

Letter to the Court from William Tomasulo ……………………………………………. Exhibit L

Letter to the Court from Suzanne Annab ……………………………………….………… Exhibit M

Letter to the Court from Robert Cox ……………………………………………..…….. Exhibit N

Letter to the Court from Peter Ortega …………………………………………………….. Exhibit O

Letter to the Court from Barry Weiss …………………………………………..…………. Exhibit P

Letter to the Court from Paul Lombardi, M.D. ………………………………...………. Exhibit Q

Letter to the Court from Shari Levin, LCSW, QCSW ………………………………….. Exhibit R

Additional Treatment Summaries & Evaluations ……………………….……………… Exhibit S

## I. INTRODUCTION

This memorandum and attached exhibits are respectfully submitted for the Court's consideration prior to imposing sentence on Eric Saldarriaga. Mr. Saldarriaga is before this Court to be sentenced upon his conviction, after a plea of guilty pursuant to a plea agreement, of conspiring to engage in computer hacking, in violation of 18 U.S.C. § 1030(b). Through this pre-sentence submission, we respectfully request that this Court exercise the greatest possible degree of mercy and leniency in sentencing Mr. Saldarriaga. We have structured a sentencing option for Your Honor's consideration which we believe is in keeping with the needs of justice and seeks to address the individualized factors in the instant case. We respectfully request this Court to exercise its discretion to sentence Mr. Saldarriaga in a manner that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. We hope that that this memorandum and accompanying letters serve to articulate the history and character of the man who will stand before you for sentencing on June 29, 2015.

## II. PRESENTENCE REPORT AND ADVISORY GUIDELINE CALCULATION

The Pre-Sentence Report ("PSR") accurately states that on or about March 6, 2015, Mr. Saldarriaga appeared before this Court and pled guilty to conspiring to engage in computer hacking, in violation in violation of 18 U.S.C. § 1030(b). PSR ¶ 4. The PSR accurately calculates Mr. Saldarriaga's total Guideline offense level to be 8 and his Criminal History Category ("CHC") to be Level I. Id. Based on Mr. Saldarriaga's total offense level and CHC, the advisory Guideline Range is 0 to 6 months imprisonment. PSR ¶ 18. As noted, Probation recommends a sentence of three years' probation, to include six months of home confinement. Id. For reasons detailed below, and for those detailed in the sentencing letter we have requested

[1]

to be filed under seal, we respectfully urge this Court to impose a sentence of three years' probation, without the home confinement element.

### III.     PERSONAL HISTORY OF ERIC SALDARRIAGA

*Early Years & Personal Life*

Eric Saldarriaga was born on October 24, 1973 in New York City to Petra and Victor Saldarriaga.  Mr. Saldarriaga's father was a mechanic and his mother worked in retail sales. Victor and Petra Saldarriaga raised Eric and his older brother, German, in Astoria, New York. Mr. Saldarriaga describes his early childhood as "great" and "very family-oriented."  PSR ¶ 30. However, when Mr. Saldarriaga was 15 years old, his father suddenly moved to Houston, Texas. This abrupt move came as a "huge blow" as Mr. Saldarriaga had a very close relationship with his father.  Mr. Saldarriaga immediately felt the effects of his father's departure, both emotionally and financially.

On June 3, 2006, Eric Saldarriaga married "his best friend from high school," Anna Griolo.  Exhibit A.  Anna wrote this Court describing how Eric's father's departure affected her husband.  She writes:

> Eric's parents divorced when he was 15 years old, his father left his mother for another women [sic] because his mother was an alcoholic.  Eric's father moved to Texas and on Eric's first visit with his father, his father did not want to return Eric to his mother…Eric always had anger toward his father for leaving them the way that he did.  [Ex. B].

Anna goes on to address the financial pressure placed on Eric during his formative years, writing:

> While Eric was in high school he had to work to support his mother, eventually forcing Eric to drop out of high school so that he can [sic] work fulltime…Aside from helping his mother 15 years ago, Eric's uncle passed away in Puerto Rico from alcohol overdose and therefore his grandmother had to come live with Eric and his mother.  [*Id*.].

Alejandro Fernandez, an Assistant Principal with the New York City Department of Education, met Mr. Saldarriaga in 1983 through a neighborhood church youth group. They have remained close friends for the past thirty-two years. In his letter to the Court, Mr. Fernandez recalls how Mr. Saldarriaga sacrificed his high school years to provide for his family, writing:

> I meet [sic] Eric Saldarriaga in 1983 when he was ten years old and I was a member of a [church] youth group…in Astoria, Queens. I was friends with his older brother, German Saldarriaga. We all grew up together and have remained close friends for the past thirty-two years.
>
> As a young man, Eric was tasked with the challenge of taking care of his mother and grandmother after his parents' divorce. He never complained about the challenges, both financial and emotional. He just worked harder and provided for his family. [Ex. C].

Daniel Bastardo, a retired New York City Police Officer and childhood friend of Mr. Saldarriaga who lives in the same neighborhood, wrote this Court describing Mr. Saldarriaga as a "responsible and mature" teenager. Exhibit D. Mr. Bastardo writes:

> Erick [sic] was a little boy when I met him and his family. We lived in the same neighborhood and attended the same church. I remember giving him driving lesions. He was [ ] easy to teach and very responsible. When he was 16 years old, I would allow him to drive my car because he was very responsible and mature. He is a very dedicated family man and good dependable friend. [*Id.*].

Eric Saldarriaga maintains a close relationship with his family members. Although Mr. Saldarriaga ceased all contact with his father from 1991 to 1994 after learning that his father had a child out of wedlock, they enjoy a loving and supportive relationship today. In his letter to the Court, Mr. Saldarriaga relates his "fear that [he] will not be there for [his] mother and 93-year-old grandmother, both of whom are in poor health and rely on [Mr. Saldarriaga] solely for their care and financial support. [Mr. Saldarriaga is] their only kin living in New York." Exhibit A.

Eric and Anna Saldarriaga have two sons together: Christopher, age 6, and Gabriel, age 4.

[3]

Mr. Saldarriaga's family and friends regard him as a wonderful husband, father, son, and grandson. In addition to supporting his wife and children, Eric continues to support his mother and grandmother. His wife, Anna, writes:

> Your Honor, working as a private investigator is how Eric helps support his immediate family (myself and the boys), helps his mother who continues to be an alcoholic and his grandmother…[O]ver the years many people have told Eric to give up on his mother but he won't and…I will stand by his side because it is his mother and she did raise him on her own. Eric takes both his mother and grandmother to every doctor appointments, AA meetings and therapy appointments. Eric has had a rough life growing up and aside from his mother and grandmother who depend on him on a daily basis, Eric also helps his father when needed. Eric's father suffered from prostate cancer about 5 years ago. Eric is constantly worried about his father. There is not much his father can afford so Eric pays for his cell phone so that he can keep in touch with his father. [Ex. B].

Anna Saldarriaga describes Mr. Saldarriaga as "a great husband" and "fantastic father." Id. In his letter to the Court, Mr. Saldarriaga explains that Anna "works full time in the corporate world, so I have to been the primary caregiver since their birth." Exhibit A. Mr. Saldarriaga continues:

> I volunteer at my children's school as well as with organizations like the *Polly Klaas Foundation* to help find missing children, attend PTA meetings, chaperone school trips, and accompany my sons to almost all of their afterschool activities. Christopher is…one of the youngest students in his class, which causes him to struggle with learning and adapting to things like "common core math" and reading. No father wants to see his child fall behind, so I spend at least an hour a day practicing and studying with him. [*Id*.].

In her letter to the Court, Anna illustrates a typical day in the Saldarriaga household. She writes:

> [M]y husband shares all household and parenting duties with me. There is nothing that I would do for my family that [Eric] would not. In the morning once the four of us are ready to leave the house…my husband drops me off at the train station and then proceeds to take the boys to school. He picks them up at 2:10 and 2:30, makes them lunch and does homework with them and on days where time permits he will prepare dinner as well. Eric stops by his mother's hose when time permits and prepares meals for [his mother and grandmother] as well.

[4]

> Your Honor, if my husband is taken from us I can't do the majority of what he does on my own. Financially I cannot help his family and due to my work schedule and location I cannot pick up the boys from school. Every free moment that my husband has is dedicated to his family. [Ex. B].

Many of Mr. Saldarriaga's friends and family wrote this Court describing his altruistic character. Rev. Msgr. David L. Castro, a pastor and NYPD Chaplain, has known Mr. Saldarriaga for over twenty-five years. Rev. Castro wrote this Court describing Mr. Saldarriaga as "a devoted husband and father" and an "honest individual" who is "devoted to the Church and helps in the community wherever needed." Exhibit E. Alejandro Fernandez echoes these sentiments in his letter to the Court, describing Mr. Saldarriaga as "dependable and of sound moral character." Exhibit C. Mr. Fernandez continues:

> Eric has always wanted to help the needy, and continues to want to make the world a better place. He never shies away from tackling injustice. He is also human and as such, made a mistake…I know Eric, and I can attest to his moral character and his sense of right and wrong. He is always on the side of the victim and has always done his best to remedy any injustice. I plead that you take…Eric's character into consideration when he is sentenced before your Court.
>
> I also plead that you take into consideration that Eric is the financial and emotional support for his wife, sons, mother and grandmother. He is a dedicated father who donates his time and money to his sons' school. He is extremely involved in their lives and is often their primary caregiver when they are not in school. His boys are his world and he is their hero. I fear that irreparable harm will be done to these two precious, impressionable young boys if their father were sentenced to any jail time. [*Id.*].

Enio Bencosme, a retired NYPD Detective also wrote this Court describing Mr. Saldarriaga's caring nature. He writes:

> I have known Eric for over 40 years, since we were young boys growing up around the block from each other. Eric has always been a good hearted individual, who was always there to help anyone who needed his help. One of the great things about Eric is that he always goes above and beyond to help someone without expecting anything in return. I have seen this selfless trait throughout the years in both his personal and business life. [Ex. F].

[5]

Mr. Bencosme goes on to highlight Mr. Saldarriaga's family-oriented values:

> Eric is a family man who is dedicated to his family.  He has always put his wife and two sons above all.  He has worked hard to teach his boys to be respectful and honest.  He is also dedicated to supporting his mother and grandmother both financially and emotionally.  He has also been there for his brother, a retired New York City Police Officer.  His brother was forced to retire and get a heart transplant in order to live a productive life.  I saw how Eric dropped everything to go and be with this brother, to support him and his wife.  He has always been there for [his family] through the good and bad putting his family before anything else.  [*Id.*].

In her letter to the Court, Anna Saldarriaga recalls how her husband "saved the day" on a recent family sledding excursion.  She writes:

> My husband will go out of his way to help anyone that is injured or needs help in the streets.  My husband and I took our boys sledding at the local park during the first big snowstorm of the year 2015 when a boy who was sledding with his friends crashed into the wall.  My husband helped pull the boy up the hill, took full control of the situation by putting the boy on a cardboard, covered him with a warm blanket, splinted his leg the best he could while someone called 911.  When EMS got there they asked who did this and [Eric] said he did and they asked him if he was an EMS worker. Eric responded no he just wanted to help.  [Ex. B].

Rafael Salinas, Mr. Saldarriaga's childhood friend, writes:

> [Eric] consistently demonstrate[s] an upstanding character, friendship, and…an excellent set of morals not easily found today.  As a [New York City public school] teacher who works with at-risk children, I can honestly state that his is an integrity that would benefits not only my students to know, but adults as well.  [Ex. G].

Mr. Saldarriaga's commitment to his family is unwavering. He writes:

> I want nothing more than to give my boys the nurturing parenting that I never received.  Now, I feel like an endless failure to them…How could I lead by example when I am now a felon? I suppose the best lesson I can pass on to them is that "no one is exempt from the law, and there are serious consequences for those for feel they are!"

> There is absolutely nothing I would not do for my boys.  I have made every effort to be an exemplary and involved father, particularly since my own father left when I was 14 years old.  I know what it is like to be a young Hispanic man growing up in New York City without a father.  It is terrible that I have become yet another statistic – a minority father from a broken home, raised by a single alcoholic mother, and now facing incarceration – preparing to miss out on the important days of his young children's [sic] lives.  [Ex. A]

[6]

*Education & Employment*

Unfortunately, Eric Saldarriaga's unstable home life affected his ability to perform in school and he stopped attending Long Island City High School after his junior year in order to work full-time and support his family. His wife, Anna, wrote this Court describing her husband's early career path. She writes:

> Eric took a class called Auto Shop in high school and therefore learned a lot and went to work for a mechanic. Eventually Eric could no longer work as a mechanic became a piece of large machinery fell on his back and therefore Eric had to find another way to support himself and his family. Eric went to work for Macy's as a store detective and while he was there met a private investigator that took him under his wing and taught Eric what he knew about the business. [Ex. B]

Many of Mr. Saldarriaga's colleagues wrote this Court praising his work ethic and professional reputation. Thomas J. Bridges, a private investigator who has known Mr. Saldarriaga for ten years, writes:

> I am a former federal officer in the Eastern District of New York and currently a New York State licensed private investigator. I was introduced to Eric when I was beginning my career as a private investigator. As I worked for and with Eric, I found him to be a diligent, hard-working and thorough investigator. In the time that I have worked with Eric, we became not only trusted associates, but also close friends. He is a very supportive and loyal individual and I am proud to call him a friend. The conduct for which he pleaded guilty to is totally out of character for him as I have always found him to be an honest, law-abiding man. [Ex. H]

Steven Grafakos, a retired NYPD Detective who has known Mr. Saldarriaga for approximately five years, both on a business and professional level, writes: "Mr. Saldarriaga has always presented himself and maintained the highest standard in his work and social status." <u>Exhibit I</u>. Mr. Grafakos continues:

> He is a devoted husband, outstanding father, and responsible caregiver financially supporting and the physical care of both his mother and grandmother. Mr. Saldarriaga has medical issues himself but struggled to overcome them in order to maintain a responsible family environment. To see Mr. Saldarriaga with his sons

[7]

>warms the heart as the bond of a strong gather is earnest and visible to all who know[ ] him.  [*Id*.].

Michael Pizzi, a retired United States Marshal and private investigator, echoes these sentiments.

Mr. Pizzi writes:

>I retired in 1991 as Chief Deputy US Marshal in SDNY and returned as US Marshal in EDNY after being appointed by President Clinton in 1994.  After retiring again in 1997, I went into private investigative work and in 1998 started my own investigative firm in the offices of Laura Brevetti who is a former AUSA and Strike Force Chief from EDNY, where I was introduced to Eric.
>
>I got to know Eric well enough to like him, trust him, and work with him.  I knew Eric to be a hardworking, honest and law abiding individual as well as a good provider and good family man.  Committing a crime is so out of character for Eric that I am honestly stunned by his admission to the crime but confident in the belief that Eric has seen the error of his judgement and is repentant for what he did. [Ex. J].

Kevin Ripa, the Director of Investigations at the Alberta Department of Justice, has known Eric, both professionally and personally, for approximately 15 years.  Mr. Ripa writes:

>I…was completely shocked at the charges levied against [Eric] recently, and his subsequent guilty plea.  This transgression notwithstanding, Eric and I have consulted each other in many matters throughout North America, and I have noted Eric to always be involved closely with his community and family.  He is actively engaged with the PTA at his school and has used his knowledge of security and safety to bring about positive change in more than one area. [Ex. K].

William Tomasulo, a retired NYPD Detective, has worked with Eric on multiple NYPD investigations.  Mr. Tomasulo writes:

>I am a retired NYC Police Dept. Detective, having served 30 years.  After retiring, I served an additional 5 years as a Senior Investigator with the NYC Special Commissioner of Investigations office.
>
>I have known Eric for over twenty years, having met him while working on an NYPD case and was impressed with his knowledge of investigative techniques and electronics.  Eric has assisted me in a case of mine since he had access to resources that at the time the NYC Police Dept. did not have and I was grateful for his help.  I have known Eric to me a hard working family man providing love and support for his children, wife and elderly mother and grandmother.  [Ex. L].

Mr. Saldarriaga's former client, Suzanne Annab, a cardiology nurse practitioner, wrote this Court illustrating Eric's commitment to his clients. She writes:

> I met Eric almost 11 years ago, when my younger sister ran away from home. We contacted the NYPD, but they were of no assistance to us. Eric successfully led me to finding my sister. Recently, I fell victim of a targeted identity theft, my personal files including emails, bank accounts, and DEA number (write prescriptions) were compromised. Once again, Eric came to my rescue. With his knowledge and expertise he was able to get me out of a bad situation. [Ex. M]

Ms. Annab continues:

> Eric not only aided me, but he educated me on identity theft protection. To find out that Eric has [been] charged with a felony is almost unbelievable. He is a hardworking, honest, trustworthy, loving, devoted man…[P]eople who come to Eric have limited resource[s] and are in dire need of his assistance. I know he takes pride in helping others. [*Id.*].

Robert A. Cox, a local journalist and publisher, wrote this Court illustrating Mr. Saldarriaga's professional reputation and character. He writes:

> I am on the press list for the U.S. Department of Justice, Southern District. I was truly shocked when I received an email containing a press release announcing a guilty plea by Eric Saldarriaga…As soon as I finished reading the email I called Eric to offer my assistance. After a long talk he said the best thing I could do is write a letter on his behalf. I readily agreed hence this letter today.
>
> I came to know Eric through my reporting on Jose Martinez, a former administrator in the New Rochelle School District. I broke a story that Martinez had been raping students in his office…The New Rochelle Police arrested Martinez about a week later. Eric was working for a lawyer representing one of the victims when we first met. [Ex. N].

Mr. Cox continues:

> Martinez pled guilty and was sentenced to 100 days of shock incarceration and 10 years' probation. Without rehashing the case, Martinez, a now-convicted sex offender, moved to Brooklyn…[and] managed to drop off the radar of the various county and state agencies responsible for him. I would later learn through Eric that Martinez used the opportunity to locate himself in the midst of several schools, including children of the age of Martinez's victims in New Rochelle.
>
> I wrote an article in which I requested any information on the whereabouts of Jose Martinez and placed that article online. Several months went by before I received

> an anonymous phone call from a person who provided a business address for Martinez. I do not have the resources to the necessary investigative work required to confirm that sort of information…and then use that information to determine a home address. [*Id*.].

Mr. Cox goes on to explain Mr. Saldarriaga's instrumental assistance in the investigation:

> I reached out to Eric for help. He did not hesitate. Within the hour he was at the location…Eric spent hours observing Martinez and then, on his own initiative and at his own expense, put a three man team on Martinez for the next 24 hours. [Eric] and his team were able to observe Martinez violating the terms of his probation…and locating him at his home address in Brooklyn. Martinez was residing at an apartment…located between four schools…the schools were all within two blocks of [Martinez's apartment].
>
> Using the information obtained by Eric, I was able to report out the story and share the resulting information with the appropriate authorities…Eric was helpful on other cases. His concern was always to help me track down "bad guys" and…[t]here was no remuneration of any kind and Eric went out-of-pocket to cover significant expenses.
>
> In that first phone call after I read the DOJ press release, Eric was forthright about the situation; he acknowledged his mistakes and took responsibility for his actions. It is my hope that you will give consideration to Eric's good work to protect the community…and his many other good works over the years. [*Id.*].

Peter Ortega, a retired NYPD Detective, has known Mr. Saldarriaga for over 15 years. In his letter to the Court, Mr. Ortega describes Eric as "a thoughtful, considerate, giving person." Exhibit O. He continues:

> I have known Eric for over 15 years and I've known him to be a thoughtful, considerate, giving person. Eric has always been a good hearted individual, who was always there to help anyone who needed his help. I have seen this altruistic trait throughout the years…On several occasions [Eric] had [been] recruited [to] assist[ ]with difficult investigations in effort to obtain positive outcomes. Eric has always gone above and beyond to help others.
>
> Eric has confided in me, expressing his regret and embarrassment, which he and his family are now suffering for…Eric is dedicated to his family. In my opinion, as [a] former 114 Precinct Domestic Violence Investigator[ ], Eric is an exemplary family and community man…Eric is extremely involved in his children's [sic] school and is devoted to helping them with their education. Eric lives by his mother and grandmother, who depend on him financially and as a healthcare guardian; he is their only adult, family member living in NY. [*Id.*].

[10]

In his letter to the Court, Mr. Saldarriaga explains how the instant offense has affected how he advises clients seeking to engage in similar activity. Mr. Saldarriaga writes:

> A client of mine, a single father, recently asked me for advice regarding the purchase of online spyware which he intended to use on his new girlfriend. This man had just gone through a horrible divorce and had lost all trust in women. I *begged* him to please think of the consequences that any illegal actions could have on him and to think of his son! I shared my story with him, telling him that this happened to a "friend of mine", as I was too ashamed to divulge the truth to him. [*Id.*].

*Present Circumstances*

In his letter to the Court, Eric Saldarriaga accepts full responsibility for his actions, recognizing "the circumstances I am in are no one's fault but my own, and I am struggling mentally and physically to prepare to face the consequences, whatever they may be." Exhibit A. He continues:

> Over the past 15 months, I have been consumed with guilt, extreme anxiety, and humiliation over the actions that have led me to this point. The mental anguish that I feel has led me to seek weekly counseling and psychiatric help. For the past months, I have relied on the aid of anti-depression and anti-anxiety medications to get through the day. In addition to a decline in my mental health, I feel my physical problems worsen. [Ex. A].

Mr. Saldarriaga suffers from a myriad of physical ailments. As reflected in the PSR, his medical history is "significant for cardiac disease, including coronary artery disease, arrhythmia, SVT, history of pulmonary disease including asthma and neuropath." PSR ¶ 19. Mr. Saldarriaga also has a history of "hypertension, hyperlipidemia, sleep apnea on CPAP, obesity, family history of cardiopathy, diverticulosis, GERD, SVT status post ablation in 2005, history of AVMs of the brain with a cerebral hemorrhage in the past, non-obstructive carotid artery stenosis and anxiety." *Id*. See also Exhibits Q-S. Approximately five years ago, Mr. Saldarriaga sustained a traumatic brain injury after slipping on a patch of ice, which required substantial medical

treatment. Diagnostic testing revealed that he has a brain malformation that makes him more susceptive to post-traumatic bleeding in the brain. Mr. Saldarriaga also suffers from cardiac issues, including a hereditary heart disease. His brother, who suffers from the same disease, had to retire from the NYPD and undergo heart transplant surgery. As Dr. Paul Lombardi, one of Mr. Saldarriaga's treating physicians, succinctly states:

> Mr. Saldarriaga…suffers with Hypertension, Hypercholesteremia, Asthema, Sleep Apnea, Depression Cerebral AV Malfunction and Severe Anxiety Syndrome exacerbated recently by personal legal issues…Incarceration would be detrimental to Mr. Saldarriaga's health. [Ex. Q].

In her treatment summary, Mr. Saldarriaga's Clinical Psychotherapist, Shari Levin, LCSW, QCSW, notes:

> Mr. Saldarriaga is currently not employed due to legal issues stemming from a federal investigation, which began in March 2014…This investigation has been the focus of Mr. Saldarriaga's life for the past year. He accepted a plea to a felony charge… This event and decision has sent him into a significant depressive episode. He reports feelings of worthlessness as a person, a husband and a father. He states that he will not be able to provide a satisfactory income for his family. He reports feelings of hopeless and helplessness.[Ex. R].

Many of Mr. Saldarriaga's friends wrote this Court expressing concern for Eric and his family. His friend, Peter Ortega, writes:

> This pending issue has put an enormous stress on Eric and his family. I know Eric has medical issues, some that have worsened with this situation. I understand that he [is] being treated for anxiety attacks, due to this legal issue…He also has a hereditary heart disease, the same as which led his brother to have a heart transplant a few years ago. His brother developed cardiomyopathy, while he was a police officer in the NYPD, ultimately causing his retirement. [Ex. O].

Barry Weiss writes:

> I am an attorney admitted to practice in New York and in the Southern District. I am a principal in the law firm of Weiss and Rosenbloom, P.C., a small litigation practice in Manhattan.
>
> I have known Eric well since the mid-1990's. He is an extremely involved father to his two young sons. I have always known him to be an honest, hardworking

man. I agreed to write because I am deeply concerned about his potential incarceration on two levels…First…[i]n my opinion, his future health would be placed at great risk should he be incarcerated in the general prison population. It would be dreadful to his two young children should something untoward happen to him in prison that exacerbated his medical conditions rendering him dead or disabled. [Ex. P].

Mr. Weiss continues:

Second, and perhaps more important is I know firsthand, that Eric has immeasurably suffered mentally and physically since the institution of these proceedings that culminated in his guilty plea. I know how remorseful he is for what he has done and how he has disgraced his family name. I also know he has owned up to his responsibilities by pleading guilty to a felony which will severely impact his ability to make a living and financially support his children. To incarcerate Eric, even for a relatively short period would have a devastating impact on them during their formative years. One, that in my opinion, may be difficult for them to overcome. [*Id.*].

Kevin Ripa also wrote this Court expressing his concern for Mr. Saldarriaga and his family:

Eric has a wonderful family with two young boys, and they would suffer considerably more than they already have, if Eric was to be incarcerated. In talking with him at length since this episode came to light, I can categorically state that he fully understands the gravity of his error and the situation it has created for him, and I know that he would never attempt such an offense again…[Eric] fully understands what he has done, and remanding him would severely negatively affect not only his already poor health, but also his family, who has already suffered greatly through no fault of their own…I plead with [Your] Honor to please consider all of the good that Eric has done, both publicly, and for his family when considering [Eric's sentence].

This pending issue has put an enormous stress on Eric and his family. I know Eric has medical issues, some that have worsened with this situation. I understand that he [is] being treated for anxiety attacks, due to this legal issue…He also has a hereditary heart disease, the same as which led his brother to have a heart transplant a few years ago. His brother developed cardiomyopathy, while he was a police [officer in the NYPD, ultimately causing his retirement. [Ex. K].

Mr. Saldarriaga's friend, Enio Bencosme, writes:

The pending issue has put an enormous stress on Eric and his family. This is something that Eric regrets getting himself involved in and is embarrassed that his family has had to go through this. There is not one day that he is sorry for what he has put his family through and would [do] anything to change this. I know Eric has seen his errors and is truly sorry for his lack of judgement. [Ex. F].

[13]

Alejandro Fernanez, Mr. Saldarriaga's childhood friend, writes:

> In the past thirty-two years, I have witnessed Eric experience good times and bad times, sad times and happy times. However, in the past months, Eric has been very different. I am extremely concerned about him and his well-being. Eric has suffered greatly for his error. Jail time would only serve to break him and break the hearts of his family members, including his beloved sons. [Ex. C].

His wife, Anna, writes:

> Your Honor since my husband's case with the government began he has been an emotional mess…[M]y husband has several medical conditions but we had to treat the situation on hand at the moment which was causing all those medical issues to worsen. Once my husband was medicated he was calm but would fall asleep and I could not get him up…[T]here were times…I would try to wake him up to help me with the boys and he could not wake up. This is very unusual for my husband because since day one that we had our boys he has always been hands on. There were many times that my children would ask me if daddy was okay.
>
> Your Honor my husband really is a good person that made a mistake. He has never hurt anyone and would never hurt anyone. I am begging you to please grant him a second change and let him work to provide for his family. It would destroy him if he could not provide for his family and continue to help his parents and grandmother, we honestly don't know where it would leave them without Eric, not to mention to take care of his health. [Ex. B].

Finally, Mr. Saldarriaga wrote this Court, "with great humility and remorse to ask that, for the sake of my beloved family whom I care for with all my heart for leniency in my sentencing." <u>Exhibit A</u>. He goes on to describe how this situation has affected every aspect of his life. Mr. Saldarriaga writes:

> I have pled guilty to a felony and, for the past 15 months, have carried on my shoulders the heavy burden of the crimes I committed. Every day, I look back at the poor choices that I made and how they have negatively impacted my family, the investigations industry, my clients, and myself. The pain and suffering that I have caused my loved ones and anyone affected is irreversible. The ramifications of what I have done can never be taken back, and I am ashamed that my two young sons have had to witness their father's helplessness and hopelessness during my dark times…I hope that my acceptance of responsibility for the crimes I committed serves as an example to my children and an important life lesson for them. [*Id.*].

[14]

Now Mr. Saldarriaga prepares to accept the consequences of his lapses in judgement and is ready to build on the promise he has demonstrated throughout his life. Like most things, it will not be easy, and Mr. Saldarriaga will have to work harder than ever before; but with his family and friends by his side, Mr. Saldarriaga will receive the support necessary to move forward with his life.

## IV.  SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)

Taking into account the factors enumerated in 18 U.S.C. § 3553(a), we respectfully suggest that a sentence of three years' probation is appropriate in this case. As this Court knows, the statute instructs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" as outlined below. We respectfully suggest that the balance of all these factors weigh in favor of a non-incarcerative sentence, which would meet the sentencing goals of punishment and deterrence.

*Nature of the Offense and the History and Characteristics of the Defendant*

Nothing herein suggests that the crime which has brought Mr. Saldarriaga before this Court is not serious, nor do we intend to downplay that seriousness. We ask only that it be viewed in context. The circumstances of the offense and the history and characteristics of Mr. Saldarriaga justifies a sentence of three years probation and is congruent with the statutory mandate to "impose a sentence sufficient, but not greater than necessary," while satisfying the goals of sentencing and the enumerated purposes set forth in the statute.

*The Need for Deterrence*

To the extent that criminal sanctions do have a general deterrent effect, the certainty and swiftness of punishment have a far greater deterrent effect than the severity of the sanction. Mr. Saldarriaga is unlikely to recidivate. He writes:

> The stress and shame that I have caused my family, peers and extended loved ones is irreparable, and the ramifications of what I have done are permanent. Pleading to a felony will forever alter my life. The decreased viability of my business and the lack of trust from colleagues are just a few of the consequences of my actions. [Ex. A].

Mr. Saldarriaga continues:

> What hurts just as much is the stigma I will feel in my community. I value my position as a volunteer for my children's schools and sporting activities and the *Astoria Homeowners and Tenants Association*, and now I must withdraw myself from many of the positions I hold. I am embarrassed and saddened by the lifelong consequences I've brought upon myself by committing a felony. I am embarrassed and very remorseful to the victims whose privacy I violated. I wish I could undo any distress they may feel once they learn of my actions. [*Id.*].

Moreover, Mr. Saldarriaga has accepted responsibility for his actions and pled guilty in a timely fashion, thus allowing the Government to allocate its resources more efficiently, as indicated by a reduction of 2 levels in his "Total Offense Level." PSR ¶ 21.

## V.     SENTENCING RECOMMENDATION

As noted above, we respectfully request a sentence of three years' probation. This will provide for appropriate punishment while allowing Mr. Saldarriaga to remain close to his support network of family members and friends, continue to care for his elderly mother and grandmother, monitor his health issues, and become a contributive member of society.

**VI.     CONCLUSION**

As detailed extensively above, we believe that in this particular case, our sentencing recommendation would provide an adequately onerous sentence that is harmonious with the needs of justice: a sentence sufficient, but not greater than necessary.

Respectfully submitted,

BRILL LEGAL GROUP, P.C.

By:   Peter E. Brill
      15 Maiden Lane
      Suite 1500
      New York, NY 10038
      (212) 233-4141

[17]